IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 13-202 |
| | ) | |
| RAYMONT BENTLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

CONTI, Chief District Judge

On October 9, 2013, defendant Raymont Bentley ("defendant") filed a motion to revoke detention order pursuant to 18 U.S.C. § 3145(b). (ECF No. 193.) After a de novo review of the proceedings before the magistrate judge, as well as a review of the pleadings in this case, the pretrial services report prepared by the pretrial services officer, the arguments of counsel, and the hearing held on October 22, 2013, this court denied defendant's motion and ordered that defendant be detained without bond pending trial. This Memorandum Opinion sets forth the reasons for the court's decision, which were detailed on the record.

**I. Background**

    **A. Procedural History**

On July 17, 2013, a grand jury returned a fourteen-count indictment at criminal action number 13-202 charging defendant and ten others, i.e., defendant's co-defendants, with various drug trafficking, drug possession, and firearm crimes. Specifically, defendant and seven of his co-defendants were charged in count one of the indictment with conspiracy to possess with intent to distribute and distribute twenty-eight grams or more of a mixture and substance containing a

detectable amount of cocaine base, in the form commonly known as crack, and a quantity of cocaine, in and around September 2012 and continuing thereafter to in and around July 2013.[1] (ECF No. 1.) The offense at count one of the indictment carries a statutory minimum term of imprisonment of not less than five years and a statutory maximum term of imprisonment of forty years. (ECF No. 2 at 8.)

A detention hearing was held on July 22, 2013. At the hearing, the magistrate judge determined by clear and convincing evidence that defendant posed a risk of danger to the community and entered an order of detention for defendant pending trial. (ECF No. 67.) After defendant moved to revoke the order of detention, this court held a de novo hearing on October 22, 2013. After reviewing the transcript of the July 22, 2013 detention hearing, and taking into consideration the evidence and proffers of evidence presented at the October 22, 2013 hearing, the court denied defendant's request for bond.

### B. Offense History

At the detention hearing before the magistrate judge on July 22, 2013, the government presented the testimony of Connor Mullen ("Mullen"), a sergeant detective with the Allegheny County Sheriff's Office assigned as a task force officer with the Federal Bureau of Investigation (the "FBI"). (H.T. 7/22/13 (ECF No. 197) at 3.) Defendant presented the testimony of Phyllis Bentley, defendant's grandmother. (Id. at 8.)

At the detention hearing before this court on October 22, 2013, the government presented the testimony of Eli Peyronel, a deputy with the Allegheny County Sheriff's Office assigned as a task force officer with the FBI. Defendant presented the testimony of Latoya Bentley, defendant's mother, and entered into evidence a search inventory performed after a search

---

[1] This was the only count in which defendant was named in the indictment.

warrant was executed on the home of Raymond Turner, defendant's father. (Id. at 26, 35.) Based upon these sources and the pretrial services report, the following factual background was developed.

Two of defendant's telephones were the subject of a Title III wiretap investigation; one telephone was subject to a wiretap over a sixty-day period and one telephone was subject to a wiretap over a thirty-day period. (ECF No. 197 at 4.) Peyronel testified that during the time period in which defendant's telephones were subject to the wiretap:

- Defendant in his group of associates was top supplier to numerous people below him for crack cocaine and cocaine.

- Defendant sold powder cocaine and crack cocaine and turned the powder cocaine into crack cocaine.

- Defendant trafficked crack cocaine and cocaine primarily in Crawford Village, a high crime housing project located in McKeesport, Pennsylvania.

- Defendant spoke about narcotics more than once and spoke with more than one individual about narcotics.

- Defendant spoke with at least ten customers about the sale of cocaine and powder cocaine during the sixty-day period during which defendant's telephones were wiretapped.

- Defendant's father was defendant's supplier of cocaine, and defendant would purchase anywhere from a quarter ounce to two ounces of cocaine from his father at a price of $1,200 per ounce, and that defendant obtained more than thirty grams of cocaine from his father during the course of the wiretap investigation.

- Defendant trafficked over thirty grams each with his co-defendants Brock Cochran ("Cochran") and Diamante Law ("Law").

- Defendant had regular contact with individuals involved in acts of violence and indicted with defendant in this case.

Mullen testified that:

- Defendant was known to stay at his grandmother's home and conduct various drug trafficking activities at that location. (H.T. 7/22/13 (ECF No. 197) at 5.)

3

- Jiron Turner ("Turner"), a co-defendant in this case, delivered cocaine to defendant at defendant's grandmother's home. (Id.)

- Defendant paid drug debts at his grandmother's house and sold crack cocaine in the parking lot of the residence. (Id.)

- Defendant was arrested at his grandmother's home, but there were no drugs or firearms found on defendant's person when he was arrested. (Id. at 7.)

Mullen and Peyronel testified that in December 2012, defendant spoke with Cochran about the purchase of a firearm for $160. (H.T. 7/22/13 (ECF No. 197) at 4.) On May 23, 2013, a search warrant was issued for the home of defendant's father. (H.T. 7/22/13 (ECF No. 197) at 4; Def.'s Ex. A.) Upon execution of the search warrant, two firearms were found in the home; one in a bedroom investigators identified as belonging to defendant and one in a bedroom investigators identified as belonging to defendant's father. (H.T. 7/22/13 (ECF No. 197) at 4; Def.'s Ex. A.)

C. **Defendant's Personal Background**[2]

According to the pretrial services report prepared by the United States Probation and Pretrial Services Office, "defendant is a lifelong resident of the Western District of Pennsylvania with confirmed ties to the community and a stable residence available to him if released on bond." (Pretrial Services Report at 5.) Defendant's mother, father, and grandmother reside in the Pittsburgh, Pennsylvania area, and defendant maintains contact with his family. (Id. at 1.) The Pretrial Services Office reports that defendant has no history of formal employment. According to the pretrial services report and defendant's mother, defendant receives financial support from his family. (Pretrial Services Report at 2.)

---

[2] Defendant's personal background information was obtained from testimony given by his grandmother at the July 22, 2013 hearing, testimony given by his mother at the October 22, 2013 hearing, and the pretrial services report dated July 19, 2013.

Defendant's grandmother testified that defendant lived with her beginning in 2010 until he was arrested in 2013, but stayed with his mother in December 2012. (H.T. 7/22/13 (ECF No. 197) at 10.) Defendant's grandmother is willing to serve as a third party custodian for defendant and to notify the proper authorities if defendant violates any condition of his bond. (Id.) Defendant prior to his arrest "helped [his grandmother] with washing [her] clothes and taking [her] garbage out and other things." (Id. at 9.) Defendant's grandmother and mother testified that defendant prior to being indicted in this case was a part-time student at the Community College of Allegheny County ("CCAC"). (Id. at 9.) Defendant's mother testified that defendant has financial aid to pay for his tuition and books at CCAC, and if the court released defendant, defendant would continue to receive financial aid.

Defendant has been involved with the criminal justice system since the age of sixteen. (Pretrial Services Report at 3.) He was adjudicated delinquent three times as a minor for the possession a controlled substance. (Id.) As an adult, defendant pleaded guilty twice to defiant trespass and twice to disorderly conduct. (Id. at 3-4.) Defendant currently has five active bench warrants and one active arrest warrant. (Id. at 5.) There are charges pending against defendant in the Allegheny County Court of Common Pleas. On December 21, 2012, defendant was charged at docket number 3327-2013 with carrying a firearm without a license. On June 8, 2013, defendant was charged at docket number 8076-2013 with delivery and possession with intent to deliver a controlled substance, disorderly conduct, tampering with and fabricating physical evidence, resisting arrest, two counts of possession of a controlled substance, and possession of drug paraphernalia. (Id. at 4.)

## II.     Standard of Review

The court's standard of review of a magistrate judge's denial of pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

## III.    Discussion

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

In this case, the government does not argue that defendant is a flight risk, i.e., defendant will not appear as required; instead, the government argues that no condition or combination of conditions will reasonably assure the *safety of the community*. Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986). The combination of drugs and guns constitutes a very serious danger to the community. United States v. Pitts, Crim. No. 09-204, 2010 WL 3303800, at *4-5 (W.D. Pa. Aug. 19, 2010) ("Several district courts have found that the combination of guns and drugs constitutes a danger to the community.") (citing

United States v. Levy, Crim. No. 08-393, 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008);

United Sates v. Miller, Crim. No. 10-4058, 2010 WL 3035753, at *4 (N.D. Iowa Aug. 3, 2010);

United States v. Francis, Crim. No. 01-60, 2001 WL 899635, at *5 (S.D. Ind. June 8, 2001)).

### A. Rebuttable Presumption

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . (A) *an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)*

18 U.S.C. § 3142(e)(3) (emphasis added).

There is probable cause to believe defendant committed the offense with which he is charged because a grand jury returned an indictment charging defendant with conspiring to possess with intent to distribute and distribute twenty-eight grams or more of cocaine base and a quantity of cocaine, in violation of 21 U.S.C. § 846. (ECF No. 1.) The maximum statutory penalty for this controlled substances offense is forty years. 21 U.S.C. § 841(b)(1)(B). Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure…the safety of the community." 18 U.S.C. § 3142(e). Defendant at the hearings before the magistrate judge and this court did not contest the application of the rebuttable presumption to this case.

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The

quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence, the presumption does not disappear. The rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

B. **The § 3142(g) factors**

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g) which the court must consider in determining whether pretrial detention is warranted. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### 1. Evidence Presented by Defendant to Rebut the Presumption

Defendant in this case did not address the first, second, or third factor listed in § 3142; instead, defendant relied upon his history and characteristics to rebut the presumption. Defendant offered the following evidence, which is set forth in more detail supra, to rebut the presumption:

- The pretrial services report recommending defendant be released on bond with certain conditions imposed;

- Defendant's grandmother's testimony with respect to the assistance defendant provided to her and her willingness to serve as a third party custodian for defendant; and

- Defendant's mother's testimony that defendant's family supports him financially and defendant is a part-time student at CCAC where he receives financial aid.

Even assuming the foregoing evidence rebutted the presumption in this case, the government persuaded the court with clear and convincing evidence of the nature of the offense charged, the weight of the evidence against defendant, defendant's personal characteristics, and the nature and seriousness of the danger to the community posed by defendant's release, that no condition or combination of conditions would reasonably ensure the safety of the community if defendant were to be released. 18 U.S.C. § 3142(f); Perry, 788 F.2d at 115 ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

### 2. Clear and Convincing Evidence Presented by the Government

With respect to the nature and circumstances of the offense charged, defendant was indicted for a very serious offense—conspiring to possess with intent to distribute and distribute

twenty-eight grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, and a quantity of cocaine. This violation of 21 U.S.C. § 846 carries a mandatory minimum term of imprisonment of five years and a maximum term of imprisonment of forty years. The indictment in this case supports the finding of probable cause with respect to this offense and is evidence of the serious nature of the offense, which weighs against a finding that defendant should be released pending trial.

Second, in considering the weight of the evidence against defendant, the court examined all the evidence presented at the hearings, including the evidence outlined above in the background section. Based upon that review, the court concludes that the weight of the evidence against defendant as presented by the government is strong. Two of defendant's telephones were subject to a wiretap as part of the FBI's investigation in this case; one over a sixty-day period and one over a thirty-day period. Evidence obtained from the wiretaps indicates defendant was engaged in a high level of trafficking powder cocaine and crack cocaine during this time period. The government has evidence that during the time defendant's telephones were subject to the wiretap, defendant:

- turned powder cocaine into crack cocaine;
- distributed more than thirty grams of cocaine each to Cochran and Law;
- purchased more than thirty grams of cocaine from his father; and
- engaged in conversations about purchasing a firearm.

Furthermore, a firearm was found in defendant's bedroom at his father's home, and defendant is currently facing state charges with respect to the possession of a firearm. In sum, the weight of the evidence, which includes evidence of defendant's involvement with drugs *and* guns, is against a finding that defendant should be released prior to trial.

Along with the evidence of defendant's history and characteristics proffered by defendant, e.g., defendant took care of his grandmother and was enrolled as a part-time student at CCAC, the evidence showed that defendant has never had a job and has been living with family members, i.e., his mother, father, and grandmother, and defendant receives financial support from his mother in the amount of one hundred to two hundred dollars per month.

Defendant does not have a lengthy criminal history. He has, however, been involved in the criminal justice system since the age of sixteen and has pending state charges for, among other serious offenses, a firearm offense, possessing a controlled substance, and possessing a controlled substance with the intent to deliver. (Pretrial Services Report at 4.) The evidence presented by the government also indicates that defendant is alleged to have committed the present crime while on release pending trial on the foregoing state charges. Additionally, although there is evidence defendant was enrolled as a part-time student receiving financial aid at CCAC prior to being indicted in this case—a fact that would weigh in defendant's favor—there is evidence defendant engaged in drug trafficking while enrolled as a student. Defendant taking care of his grandmother and being enrolled in college courses weighs in favor of his release, but his lack of employment, pending criminal charges for serious offenses, and this offense being committed while he was on release, weighs in favor of defendant's detention pending trial.

Finally, the court must consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. In other words, the court must *predict* whether defendant will engage in drug trafficking if released pending trial. Perry, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior[,]" i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses."). "Such a prediction explores not the external

world of past events but the inner territory of the detainee's intentions." Id. at 114. The court, however, can only look to the record before it, which reflects that in the past when defendant was released, he continued to engage in criminal activity, i.e., defendant was arrested at Allegheny County Court of Common Pleas docket number 8076-2013 (arrest date June 8, 2013) while he was on release for the charges filed against him at Allegheny County Court of Common Pleas docket number 3327-2013 (arrest date December 21, 2012). There is evidence, furthermore, that defendant engaged in the activity underlying the indictment in this case while on release for the charges pending before the Allegheny County Court of Common Pleas. Defendant argues, however, that the conduct underlying each of the pending charges in the Allegheny County Court of Common Pleas is a part of the same conduct underlying the indictment in this case. In any event, there is evidence that defendant engaged in criminal conduct while on pretrial release, and that he has no history of employment. Thus, even if defendant had rebutted the section 3142(e) presumption, this court finds after considering the record as a whole, there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking on release. In light of this evidence and evidence of defendant's involvement with drugs *and* guns, the court is compelled to predict that defendant is likely to traffic in drugs if he is released pending trial, which is a very serious danger that would be posed to the community.

After considering the record as a whole, including consideration of the nature and circumstances of the serious drug offense charged, the strong weight of the evidence against defendant, the history and characteristics of defendant, the nature and seriousness of danger to the community posed by defendant's release, and the rebuttable presumption, which retains evidentiary weight, there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking while on release pending trial. The government

met its burden to show by clear and convincing evidence that defendant poses a risk of danger to the community, i.e., he is likely to engage in drug trafficking if released prior to trial. The court will, therefore, enter an order of detention for defendant pending trial. An appropriate order will be entered.

Dated: November 1, 2013                              /s/ JOY FLOWERS CONTI
                                                     Joy Flowers Conti
                                                     Chief United States District Judge